[Cite as *State v. Gonzalez*, 2024-Ohio-4515.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                                  Court of Appeals No.  OT-23-027

     Appellee                                               Trial Court No.  2022 CR 0079

v.

Matthew Gonzalez                                    **DECISION AND JUDGMENT**

     Appellant                                              Decided:  September 13, 2024

\* \* \* \* \*

James J. VanEerten, Ottawa County Prosecuting Attorney,
and Alec Vogelpohl, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

\* \* \* \* \*

**SULEK, P.J.**

{¶ 1} Appellant, Matthew Gonzalez, appeals from the December 13, 2022 judgment of the Ottawa County Court of Common Pleas convicting him of two counts of rape and two counts of intimidation of an attorney, victim, or witness in a criminal case and sentencing him to two terms of life in prison and two terms of thirty-six months in prison, all of which were ordered to be served consecutively.  Gonzalez, who pleaded guilty to the offenses, contends that the trial court erred in denying his motion for new

counsel at his plea hearing and that his guilty plea was not given knowingly, intelligently, and voluntarily. For the reasons that follow, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} On May 4, 2022, the Ottawa County Grand Jury indicted Gonzalez on six counts of rape in violation of R.C. 2907.02(A)(1)(b) and 2907.02(B), a first-degree felony (counts 1, 2, 4, 5, 6, and 7); and two counts of intimidation of an attorney, victim, or witness in a criminal case in violation of R.C. 2921.04(B)(1) and 2921.04(D), a third-degree felony (counts 3 and 8). The indictment alleged that during different periods in 2021 and 2022, Gonzalez engaged in sexual conduct with two victims, D.T. and L.T., who were under 10 years old at the time, and he attempted to intimidate the victims from reporting his actions. D.T. and L.T. were Gonzalez's stepdaughters.

{¶ 3} Gonzalez was appointed counsel, Alex Smith, at his arraignment on May 5, 2022, and he pleaded not guilty to the charges. The state sent a discovery packet to Smith in May and supplemented the discovery multiple times. On August 11, 2022, the court set a hearing for a plea change for October 10, 2022, but Gonzalez did not enter a plea on that date. Instead, the court scheduled a plea hearing for November 4, 2022.

{¶ 4} At a change of plea hearing on November 4, 2022, Smith immediately informed the court that Gonzalez was requesting a new attorney and requested that the court inquire into Gonzalez's reasoning. The following discussion occurred:

> Mr. Gonzalez: Yeah, I'd like to request different Counsel because I feel like I haven't been, fairly been represented by anything. I feel like nothing's really been done. Nothing's really been – we didn't really go over any discovery. We

2.

didn't talk about a lot of things that we were going to do and just, I just don't feel like I've gotten any fair treatment towards anything, really.

The Court: All right. And are you prepared to hire your own Counsel then?

Mr. Gonzalez: No, I don't have any money.

The Court: Okay. State wish to weigh in on this at all?

Mr. Van Eerten: Just briefly, Your Honor. I can say from the State's position, Mr. Smith has attended all of the necessary hearings. We've engaged in extensive plea negotiations. Extensive discovery. This is, in fact, the second time it's been set for a plea. The discovery in this case is not all that extensive. There are witness interviews involving the two victims who were interviewed. Also with the videotape confession by Mr. Gonzalez, Mr. Gonzalez is very aware of the evidence.

I've spoken with Mr. Smith and can state that I know from just the number of court hearings that he has been present for, he has consistently been in communication with his client.
….
State's position is that Mr. Smith is more than competent [and]… has handled numerous cases like this.
….

Mr. Smith: And, Your Honor, the only thing I would just put on the record is that on May 19th of this year, I had mailed all police reports, and those police reports contained summaries of the witness interviews. So there was no, there's no SANE nurses, there's no medical evidence, that sort of stuff, that would traditionally be in these sort of cases.
…

The Court: All right. Thank you. Mr. Gonzalez, I, I have quite a few years of experience with Mr. Smith and his ability to represent clients. And he is, in the experience of this Court, always been very thorough, very professional in his dealings with the Prosecutor's office and with his clients. I, I have

asked every one of his clients if they're satisfied with the work that he's done, and every one of them has answered, yes, that they are. My experience is that Mr. Smith is good, competent, capable representation for you.

You are entitled to an, an attorney of your own choosing if you choose to hire one, but if you are unable to hire one, you may represent yourself or we'll keep Mr. Smith on the case for you.

Which is your choice?

Mr. Gonzalez: I guess I'll keep, keep him on.

The Court: All right.

{¶ 5} The trial court then instructed the state to put any offers available to Gonzalez on the record. The state began by detailing the potential penalties Gonzalez faced if he declined a plea offer. The state asserted that each count of rape had a maximum possible penalty of life without parole, and because each count involved either a different victim or a different time period, the counts would not merge for sentencing. In addition, the state noted that the two counts of intimidation of a victim had a maximum penalty of a 36-month prison term. Gonzalez also could be fined $20,000 for each count of rape and $10,000 for each count of intimidation of a victim.

{¶ 6} Next, the state reviewed the evidence in the case, contending that the two victims gave consistent, credible statements close in time to the events, and each victim's statement corroborated the other's statement. Further, the state alleged that Gonzalez had admitted to touching the victims' genitals in a videotaped statement.

{¶ 7} Finally, the state presented details of two plea offers. In the first offer, Gonzalez would plead guilty to two counts of rape, counts 1 and 4. In exchange, the state

4.

would agree to dismiss the remaining counts, but the state could recommend any sentence under the law and for consecutive sentences.

{¶ 8} In the second plea offer, Gonzalez would plead guilty to two counts of rape as well as two counts of intimidation of a victim. Under that offer, the state would agree to not seek a sentence of life without the possibility of parole, and Gonzalez would have the possibility of parole after 36 years.

{¶ 9} In presenting the offers, the state stressed that the offers would be withdrawn after the hearing that day if Gonzalez did not accept one. The state explained that neither plea offer was new and Gonzalez had been given sufficient time to consider the offers. The second offer had been extended to Gonzalez several months before the hearing, and according to the state, Gonzalez had "in theory" accepted that offer before the previously scheduled plea hearing. After Gonzalez refused to enter a plea on October 10, the state presented the first offer.

{¶ 10} Attorney Smith confirmed that the state's description of the two plea offers and the events leading up to that day's hearing were accurate. Smith also affirmed that he had kept Gonzalez apprised of the plea negotiations and the offers, specifically noting that Gonzalez had been aware of the first offer since the previous court date, October 10.

{¶ 11} Gonzalez then stated that he planned to accept one of the offers, but he requested time to speak with his attorney first. Following an off-the-record discussion with Smith, the court resumed the plea hearing with a Crim.R. 11 colloquy in which Gonzalez pleaded guilty to two counts of rape and two counts of intimidation. Relevant

5.

to this appeal, Gonzalez testified that he had enough time to think about his decision, had enough time to ask his attorney questions about the case, and he was satisfied with Smith's work. The court reviewed the written plea agreement and confirmed that Gonzalez had signed the agreement. In response to the court's questioning, Gonzalez testified that he understood the agreement, and he had entered into the agreement voluntarily and of his own free will. Gonzalez denied having any questions. Finally, the court accepted Gonzalez's plea.

{¶ 12} On December 12, 2022, the court held a sentencing hearing. The state, in accordance with the plea agreement, did not seek life in prison without the possibility in parole. Instead, the state requested the court to impose a life sentence for each of the rape counts, the maximum sentence for each of the intimidation counts, and that the sentences be served consecutively, resulting in life imprisonment with the possibility of parole in 36 years. Gonzalez sought concurrent sentences so that he could be eligible for parole in 15 years. The court imposed the sentence recommended by the state.

## II. Assignments of Error

{¶ 13} Gonzalez filed a timely appeal, asserting the following assignments of error for review:

1. The trial court abused its discretion when it denied Gonzalez's motion for new counsel.

2. Gonzalez's plea was not knowingly, intelligently, or voluntarily given.

### III. Law and Analysis

#### A. Gonzalez's Motion for New Counsel

{¶ 14} An appellate court reviews a trial court's selection of appointed counsel to represent an indigent defendant for an abuse of discretion. *State v. Tingler*, 2019-Ohio-816, ¶ 14 (6th Dist.), citing *Thurston v. Maxwell*, 5 Ohio St.2d 92, 93 (1965). An abuse of discretion is "conduct that is unreasonable, arbitrary, or unconscionable." *State v. Beasley*, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} An indigent defendant has the right to competent counsel, but not the right to appointed counsel of the defendant's own choosing. *State v. Leasure*, 2023-Ohio-2710, ¶ 30, citing *State v. Horn*, 2005-Ohio-5257, ¶ 11 (6th Dist). Accordingly, an indigent defendant seeking a substitute of appointed counsel must demonstrate good cause. *Id*. Good cause includes a conflict of interest or a complete breakdown in communication between the defendant and the attorney. *Horn* at ¶ 11, citing *Blankenship* at 558.

{¶ 16} "The defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Henness*, 79 Ohio St.3d 53, 65 (1997), quoting *State v. Coleman*, 37 Ohio St.3d 286, (1988), paragraph four of the syllabus. "Fundamentally, 'the lack of communication must be permanent in nature before a finding of a complete breakdown can be made.'" *State v. Anderson*, 2024-Ohio-2505, ¶ 36 (11th Dist.), quoting *State v.*

7.

*Jackson*, 2006-Ohio-2651, ¶ 45 (11th Dist.); *see also State v. Cowans*, 87 Ohio St.3d 68, 73 (1999) (holding that a temporary breakdown in communication was insufficient to establish good cause for substitute appointed counsel). A defendant's desire for more communications with the attorney is insufficient to establish a complete breakdown in the relationship. *See State v. Lawson*, 2020-Ohio-6852, ¶ 44, 48 (2d Dist.) (affirming denial of motion for substitution of appointed counsel based in part on defendant's contention that attorney had failed to go over the discovery with him but attorney had "discussed the options available to [the defendant], namely the State's pending plea offer, a continuance, or proceeding to trial").

{¶ 17} Here, Gonzalez sought new counsel because he believed that Smith had not sufficiently communicated with him. Gonzalez specifically alleged that Smith had not "really" reviewed the discovery with him or talked to him about decisions in his case. However, Smith testified that he had mailed Gonzalez the discovery in May and had communicated both plea offers to Gonzalez. Gonzalez had planned to accept a plea offer and then declined that offer just before the plea hearing scheduled in October. As a result, Smith negotiated another plea offer on Gonzalez's behalf, which Gonzalez ultimately accepted. The record does not support a finding of a permanent "total breakdown" in the attorney-client relationship to constitute good cause for the substitution of appointed counsel. Accordingly, the trial court did not abuse its discretion in denying Gonzalez's motion for new counsel, and appellant's first assignment of error is found not well-taken.

8.

## B. Gonzalez's Guilty Plea

{¶ 18} "A guilty plea must be made knowingly, intelligently, and voluntarily to be valid under the United States and Ohio Constitutions." *State v. Whitman*, 2021-Ohio-4510, ¶ 14 (6th Dist.), citing *Boykin v. Alabama*, 395 U.S. 238 (1969); *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). To ensure a plea's validity, the trial court must "'engage a defendant in a plea colloquy pursuant to Crim.R. 11.'" *Id.*, quoting *State v. Petronzio*, 2021-Ohio-2041, ¶ 5 (8th Dist.).

{¶ 19} If an appellant asserts that a guilty plea was not entered knowingly, intelligently, or voluntarily, an appellate court must determine whether the trial court complied with Crim.R. 11 in a way that "demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, 2020-Ohio-2765, ¶ 12. In so doing, the appellate court must conduct the following inquiry regarding Crim.R. 11: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17. If an appellant fails to establish the first part of the inquiry—that the trial court's compliance with Crim.R. 11 was deficient in some way—then the appellate court ends its inquiry and will not vacate the appellant's plea. *State v. Rogers*, 2022-Ohio-4126, ¶ 49 (6th Dist.).

{¶ 20} In support of his second assignment of error, Gonzalez asserts a one-sentence argument alleging that he had not "fully communicated" with his attorney, and

9.

therefore his guilty plea was not made knowingly, intelligently, or voluntarily and must be vacated. Gonzalez has not alleged the trial court failed to comply with any portion of Crim.R. 11, nor has Gonzalez cited any legal authority to support his argument.

{¶ 21} App.R. 16(A)(7) requires an appellant to present "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Further, appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties, because 'appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." *Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 2015-Ohio-3731, ¶ 28 (6th Dist.). Because Gonzalez has not established that the trial court failed to comply with Crim.R. 11, the trial court's judgment must be affirmed. *Rogers* at ¶ 49.

{¶ 22} Moreover, Gonzalez's allegations regarding his lack of communication with his attorney are contradicted by the record. During its Crim.R. 11 inquiry, the trial court expressly questioned Gonzalez about his attorney's representation, and Gonzalez testified that he had been able to ask his attorney questions about his case and he was satisfied with Smith's work. Nothing about Gonzalez's responses suggest—nor can this court assume—"that he actually desired to say something else." *State v. Cleveland*, 2024-Ohio-3039, ¶ 14 (6th Dist.) (holding that the appellant's simple yes-or-no responses to a Crim.R. 11 colloquy were sufficient to establish that he understood the nature of the

10.

charges against him).  Indeed, Gonzalez requested and was granted time to discuss the plea offers with his attorney privately before he entered his plea.

{¶ 23} Because Gonzalez has failed to establish that his guilty plea was not knowing, voluntary, or intelligent, Gonzalez's second assignment of error is not well-taken.

## IV.  Conclusion

{¶ 24} For the foregoing reasons, the December 13, 2022 judgment of the Ottawa County Court of Common Pleas is affirmed.  Gonzalez is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgement affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.